Fidel L. EMPERADOR, Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 90–007.

United States Court of Veterans Appeals.

Submitted July 24, 1991.

Decided Aug. 16, 1991.

Fidel L. Emperador, pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Craig M. Kabatchnick, were on the pleadings, for appellee.

Before KRAMER, Associate Judge.

## MEMORANDUM DECISION

KRAMER, Associate Judge:

On September 29, 1989, the Board of Veterans' Appeals (BVA) denied appellant's claim for service connection for rheumatoid arthritis. Because the BVA failed to con-sider the presumption contained in 38 C.F.R. § 3.307(c) (1990), the Court remands the case for proceedings consistent with this decision.

## BACKGROUND

Appellant served on active duty during World War II with the Army of the Philippines from June 1943 to February 19, 1946. R. at 2. His discharge examination revealed no abnormalities. R. at 4–5.

Apparently sometime in 1980, appellant filed a disability claim with the Veterans' Administration (now Department of Veterans Affairs) (VA) ostensibly for service connection for rheumatoid arthritis. R. at 8. In support of his claim, appellant submitted a statement, dated September 30, 1980, from his treating physician, Doctor Tomas Fangonil, who stated:

> The [rheumatoid arthritis] started in 1947, shortly after [appellant was] discharged from military service, as numbness of both upper and lower extremities. At first, [appellant] did not mind this symptom thinking that it was due to a fatigue while in the active service, but when this numbness persisted up to the time of his [discharge] from service, he became bothered[.] [Appellant] was already suffering from severe joint pains of both upper and lower extremities.

R. at 9 (emphasis added).

In February 1981, appellant, in response to a VA Regional Office (RO) request for copies of his medical treatment records, submitted another statement from Doctor Fangonil which reads in relevant part:

> This is to certify that I am a [m]edical [p]ractitioner with the degree of Doctor of medicine and surgery which is duly licensed to practice in the Philippines.
>
> The Ministry of Health does not require us to have a file of transcript of medical records of our patients and so I don't have any original record of my patient, Fidel Emperador, however, *I know his case clearly as he is my patient from 1947 up to the present time.*

R. at 11 (emphasis added).

On April 14, 1981, appellant again applied, even though no prior RO denial ap-

pears in the record, for service connection for rheumatoid arthritis. R. at 12–15. The RO denied his claim February 8, 1982.

On October 11, 1988, appellant sought to reopen his claim. R. at 18. The RO reopened the claim January 4, 1989, and denied it January 28, 1989. R. at 22–23. On March 14, 1989, appellant filed his Notice of Disagreement with the RO and shortly thereafter, appealed to the BVA. R. at 24–25, 29. The BVA issued its decision September 29, 1989, denying appellant's claim, and stating:

> The evidence clearly demonstrates that rheumatoid arthritis was not demonstrated during active service. The evidence also fails to demonstrate that rheumatoid arthritis was manifested to a compensable degree within one year following service separation. While it has been reported that the veteran developed rheumatoid arthritis in 1947, the evidence does not show that it was first manifested within one year following the veteran's separation or that the symptoms were then of compensable severity. Although the veteran is currently shown to have rheumatoid arthritis, it is not shown to have been incurred in service nor may it be presumed to have been incurred in service.

*Fidel L. Emperador*, BVA 89–928140, at 4 (Sept. 29, 1989). Appellant subsequently filed an appeal with this Court.

## ANALYSIS

Title 38 U.S.C. § 312(a)(1) (1988) creates a presumption of service connection where "a chronic disease becomes manifest to a degree of 10 per centum or more within one year from the date of separation from such service." Title 38 U.S.C. § 301(3) (1988) includes arthritis as such a chronic disease. Title 38 U.S.C. § 313(a) (1988) states that the presumption created by § 312 is rebuttable.

Title 38 C.F.R. § 3.307(c) (1990) clarifies 38 U.S.C. § 312(a)(1) by stipulating that, under certain situations, an actual *diagnosis* of the disease itself need not occur within the presumptive period. Specifical-

ly, 38 C.F.R. § 3.307(c) provides in relevant part:

> [A presumption of service connection exists where, within the presumptive period, it is] . . . shown by *acceptable medical or lay evidence characteristic manifestations of the disease to the required degree, followed without unreasonable time lapse by definite diagnosis.* Symptomatology shown in the prescribed period may have no particular significance when first observed, but in the light of subsequent developments it may gain considerable significance. *Cases in which a chronic condition is shown to exist within a short time following the applicable presumptive period, but without evidence of manifestations within the period, should be developed to determine whether there was symptomatology which in retrospect may be identified and evaluated as manifestation of the chronic disease to the required 10–percent degree.*

(Emphasis added.)

In its decision, the BVA failed to consider 38 C.F.R. § 3.307(c) in light of the statements of Doctor Fangonil. In his statement of September 30, 1980, Doctor Fangonil diagnosed appellant's rheumatoid arthritis as starting in 1947. However, because only the first 49 days of 1947 are within the one-year presumptive period (which began at discharge February 19, 1946, and ran through February 18, 1947), and because Doctor Fangonil's diagnosis did not specify when in 1947 the disease started, it is not possible to conclude, based on this statement, whether or not the disease started during the presumptive period.

Further, while Doctor Fangonil acknowledged, in his later statement of February 17, 1981, that he first treated appellant in 1947, his statement of September 30, 1980, nevertheless reports on symptoms that he asserts had developed prior to discharge on February 19, 1946, and which, by inference, continued thereafter. Thus, it appears that it would be impossible for Doctor Fangonil to have had first hand knowledge of appellant's pre–1947 symptoms. It is also noted that Doctor Fangonil's reporting of the ex-

istence of symptoms prior to discharge is inconsistent with appellant's discharge examination.

Regardless, Doctor Fangonil's reports constitute evidence that establishes, at a minimum, a well-grounded claim of presumptive service connection pursuant to 38 C.F.R. § 3.307(c). A well-grounded claim need not be conclusive but must only be a "plausible claim...." *See Murphy v. Derwinski,* 1 Vet.App. 78, 80–81 (1990). Therefore, the BVA must address the issue of appellant's entitlement under § 3.307(c) based upon Doctor Fangonil's statements and provide sufficient reasons or bases which clearly and completely explain and support its decision. *See e.g., Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990); *Martin v. Derwinski,* 1 Vet.App. 411, 413 (1991); *Townsend v. Derwinski,* 1 Vet.App. 408, 410–11 (1991); *Webster v. Derwinski,* 1 Vet.App. 155, 159 (1991); *Sammarco v. Derwinski,* 1 Vet.App. 111, 113–114 (1991). Because of the relative simplicity of the issue in this case, the outcome of which is not reasonably debatable, summary disposition is appropriate under *Frankel v. Derwinski,* 1 Vet.App. 23, 24–26 (1990).

### CONCLUSION

For the reasons stated above, the decision of the BVA is vacated and remanded for proceedings consistent with this decision.